IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NATHAN J. REOME,

                        Petitioner,                    Civil Action No.
                                                       9:12-CV-0421 (NAM/DEP)

            v.

SUPERINTENDENT, Five Points
Correctional Facility,

                        Respondent.

_____

<u>APPEARANCES</u>:                                    <u>OF COUNSEL</u>:

<u>FOR PETITIONER</u>:

NATHAN J. REOME, *Pro Se*
06-B-2044
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

<u>FOR RESPONDENT</u>:

HON. ERIC T. SCHNEIDERMAN                              ALYSON J. GILL, ESQ.
New York State Attorney General                       Assistant Attorney General
120 Broadway
New York, NY 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* petitioner Nathan J. Reome, a New York prison inmate, as a result of a conviction for rape and conspiracy following a jury trial, has commenced this proceeding pursuant to 28 U.S.C. § 2254, requesting the court's habeas intervention. Reome's petition sets forth multiple grounds for relief, including his contention that accomplice testimony offered against him at trial was not properly corroborated. Having carefully reviewed the petition and record now before the court, I recommend that the petition be denied.

I.    <u>BACKGROUND</u>

Petitioner's conviction stems from the rape of a victim, AH,[1] by four men on October 24, 2004. [Dkt. No. 1 at 1](); [Dkt. No. 16-24 at 119-200](). On that evening petitioner, together with Andrew Hilborn, Scott MacDonald, and Santino Buccina, were riding in an automobile late at night when they encountered AH running along a street in Syracuse, New York. [Dkt. No. 16-18 at 140](); [Dkt. No. 16-21 at 121](), 127. When AH saw the vehicle in which the men were riding, she approached it believing it to be an unmarked police

---

[1]    Under New York law, "[t]he identity of any victim of a sex offense . . . shall be confidential. No . . . court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection." N.Y. Civ. Rights L. § 50-b(1). In light of this provision, and to insure her privacy, the victim involved in the underlying criminal matter will be referred to herein as "AH." *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 109 n.4 (2d Cir. 2000).

car based on its configuration and the spotlight installed on its side. Dkt. No. 16-18 at 140-41; Dkt. No. 16-21 at 130. AH, who was heavily intoxicated at the time, explained to the men that someone had taken her car and she needed assistance finding it. Dkt. No. 16-18 at 138, 141; Dkt. No. 16-21 at 130. The four men responded by offering to help find her car, noting that she was in a particularly bad neighborhood, and AH entered the vehicle. Dkt. No. 16-18 at 140-41; Dkt. No. 16-21 at 130-31.

Lacking access to her cellular telephone, which was in the trunk of her car, AH used Buccina's cell phone to call her mother. Dkt. No. 16-18 at 140-41; Dkt. No. 16-20 at 93; Dkt. No. 16-21 at 132-33. Buccina dialed the number for her, but blocked his phone number from appearing on the caller identification feature of the mother's phone. Dkt. No. 16-18 at 101-105, 142-43, 199-200; Dkt. No. 16-20 at 99-102; Dkt. No. 16-21 at 1-3. The call was eventually discontinued based upon poor cell phone reception. Dkt. No. 16-18 at 105. AH next tried calling another friend, but the number she dialed was wrong. Dkt. No. 16-18 at 144-45. AH then asked if the men would drop her off at a local hotel, where another friend was staying that evening. Dkt. No. 16-18 at 145.

Before arriving at the hotel, AH fell asleep in the vehicle. Dkt. No. 16-18 at 146; Dkt. No. 16-21 at 132. While asleep, the men traveled to an

unknown remote location on a dirt road somewhere north of the City of Syracuse. Dkt. No. 16-18 at 146-47; Dkt. No. 16-21 at 135-37. Upon arriving at the unknown destination, MacDonald pulled AH out of the car and began disrobing her, removing her pants, duct-taping her hands behind her back, and placing duct tape over her mouth. Dkt. No. 16-21 at 137-39. AH awoke on the ground lying face down in the dirt without pants and with no knowledge of her location. Dkt. No. 16-18 at 147-48. Believing that she might suffocate, Hilborn and petitioner removed the tape from AH's mouth when she began to cry. Dkt. No. 16-18 at 148-49; Dkt. No. 16-21 at 139. When AH asked what the men wanted, MacDonald struck her in the face and told her that she would be killed if she did not do what they wanted. Dkt. No. 16-21 at 140.

Once AH's shirt and bra were removed, she was taken by MacDonald into the back seat of the car where he raped her. Dkt. No. 16-18 at 150; Dkt. No. 16-21 at 142. After MacDonald exited the vehicle, petitioner entered, and AH got on top of him, asked if he had a condom, and "tried to please him." Dkt. No. 16-18 at 151; Dkt. No. 16-21 at 143. When AH started crying, however, petitioner told her that she did not have to have sex with him, and he exited the vehicle. Dkt. No. 16-18 at 151. Buccina then entered the car, where he had both vaginal and oral sex with the victim. Dkt. No. 16-18 at

152-53; Dkt. No. 16-21 at 144-45. After Buccina left the vehicle, Hilborn entered next, and he, too, had sexual intercourse with AH. Dkt. No. 16-18 at 153-54.

After AH was raped and sodomized, she was given back her wedding rings, which had been inside the pockets of her pants, and all of her clothes with the exception of her undergarments. Dkt. No. 16-18 at 154; Dkt. No. 16-21 at 149-50. The men then discussed what to do with AH; Buccina indicated that he wanted to kill her, but the other men refused. Dkt. No. 16-21 at 151-52. In the end, the four returned to the vehicle and drove AH back to Syracuse. Dkt. No. 16-18 at 155; Dkt. No. 16-21 at 152-53. Petitioner was dropped off at the hotel where her friend was staying that evening. Dkt. No. 16-18 at 158; Dkt. No. 16-21 at 155-56. Before leaving her, petitioner demanded AH's license so he could record the information and told her that if she reported the incident to the police the men would know where to find her. Dkt. No. 16-18 at 155-56; Dkt. No. 16-21 at 153.

After being dropped off at the hotel, AH went to her friend's room and called her mother, informing her that she had been raped. Dkt. No. 16-18 at 82, 158-59; Dkt. No. 16-21 at 155. Her friend then accompanied her to the hospital, where she was interviewed by Onondaga Deputy Sheriff Amy Bollinger. Dkt. No. 16-18 at 160-61; Dkt. No. 16-20 at 80. AH had bruising

on her eye, chin, and jaw, a cut on her wrist, a bruise on her leg, and a bite mark or bruise on her breast. Dkt. No. 16-18 at 162; Dkt. No. 16-20 at 81; Dkt. No. 16-22 at 47-48. Nurse Anne Galloway, who also noted the victim's injuries, examined AH, conducting a genital examination and collecting evidence with a rape kit. Dkt. No. 16-18 at 162-64; Dkt. No. 16-22 at 48-57. AH's clothes, including her bra, shirt, pants, and socks, as well as dried secretions removed from her mouth, chin, hand, breast, and perineal and anal areas, were preserved as evidence. Dkt. No. 16-22 at 54-57.

An investigation concerning the incident was conducted by Onondaga County Sheriff's Detective Richard Flanagan. Dkt. No. 16-20 at 81, 90. During an interview with Detective Flanagan, AH described the rapists as four white men, all in their late thirties to early forties, and provided additional information concerning them, although she was not certain of her descriptions. Dkt. No. 16-19 at 28, 59; Dkt. No. 16-20 at 91-92. Detective Flanagan was ultimately able to subpoena information concerning the cell phone belonging to the victim's mother, and determined that she had received a call from a cell phone belonging to Buccina at 2:54 a.m. on the night in question. Dkt. No. 16-20 at 93, 99-100; Dkt. No. 16-21 at 17-18.

After following various leads, Detective Flanagan obtained petitioner's name as a possible additional suspect. Dkt. No. 16-21 at 30. Cell phone

records obtained during the course of the investigation revealed multiple telephone calls between Buccina and petitioner between October 23 and 25, 2004, including eleven calls between 5:22 a.m. and 7:35 p.m. on October 25, 2004.[2] Dkt. No. 16-1 at 196-99. The detective went to petitioner's home to speak with him about the investigation. Dkt. No. 16-21 at 31. When petitioner learned that Detective Flanagan was investigating a rape, he became pale, sweaty, and shaky, and began to lean up against a railing to study himself. *Id.* Detective Flanagan ultimately secured a court order to obtain DNA evidence from petitioner, Buccina, and MacDonald. Dkt. No. 16-21 at 32.

Hilborn was eventually identified as the fourth suspect in the investigation. Dkt. No. 16-21 at 33. When questioned, Hilborn initially denied involvement in the matter, but subsequently confessed and agreed to provide both a written statement and DNA evidence. *Id.* at 34-35. Hilborn ultimately served as a witness for the prosecution at trial, offering accomplice testimony implicating petitioner, MacDonald, and Buccina in the crimes.

As the investigation continued, the 1995 Ford Taurus owned by MacDonald's father-in-law and identified as having been painted black with

---

[2]    The records also revealed a series of calls between Buccina and MacDonald during the same time period. Dkt. No. 16-1 at 196-99.

a spotlight installed was located and searched, yielding duct tape from the rear passenger seat as well as from underneath the driver's seat. Dkt. No. 16-21 at 81, 83, 95; Dkt. No. 16-22 at 83. DNA testing of available samples revealed that MacDonald and Hilborn could not be excluded as sources of the DNA. Dkt. No. 16-22 at 190-93. AH's DNA was found on the seat cover secured from the Ford Taurus, and MacDonald's DNA was found on AH's bra and the car seat cover. Dkt. No. 16-22 at 196-97, 200. Buccina's DNA was also recovered from AH's bra, and Buccina's sperm was recovered from AH's vaginal rape kit swab. *Id.* at 200. The scientist who testified at trial was unable to exclude Buccina and MacDonald as a source of DNA on AH's anal swab. *Id.* at 201-02.

II.   PROCEDURAL HISTORY

A.   State Court Proceedings

Criminal proceedings were commenced against petitioner and co-defendants MacDonald and Buccina in Onondaga County Court by the return of an indictment on August 23, 2005, accusing the three men of rape, kidnapping, and conspiracy. Dkt. No. 16-1 at 28. That indictment was subsequently dismissed and superseded by Indictment No. 2006-0079-2. Dkt. No. 16-1 at 30-33. The superseding indictment charged petitioner with rape in the first degree (Second, Seventh, Eighth, and Ninth Counts),

criminal sexual act in the first degree (Fourteenth Count), second-degree kidnapping (Sixteenth Count), and conspiracy in the fourth degree (Seventeenth Count). *Id.*

Prior to trial on the superseding indictment, petitioner filed an omnibus motion with the trial court seeking, *inter alia*, a separate trial apart from co-defendants Buccina and MacDonald claiming that their joinder violated his right to a fair trial and their defenses were antagonistic to his. Dkt. No. 16-1 at 35, 42-45. The trial court denied petitioner's request on March 24, 2006, concluding that the defendants were charged with the same crimes and faced the same evidence, and that there was insufficient reason to believe the defendants would be prejudiced by a joint trial.[3] Dkt. No. 16-1 at 61-62. The court denied petitioner's renewed motions for severance on November 2, 2005, and June 12, 2006. Dkt. No. 16-16 at 53-58, 60-63, 99-100.

A jury trial was convened on June 12, 2006, by Onondaga County Court Judge William Walsh. Dkt. No. 16-16 at 91. During the course of that trial, testimony was received from AH and Hilborn, who pleaded guilty and

---

[3]     In its decision, the trial court ordered that certain statements made by co-defendant MacDonald referring to petitioner be redacted and prohibited the prosecution from using those statements in their case-in-chief against MacDonald's two co-defendants. Dkt. No. 16-1 at 61-62. The trial court also precluded the use of certain statements by MacDonald regarding petitioner and co-defendant Buccina as constituting double hearsay and unfairly prejudicial. *Id.* at 62.

acknowledged having received favorable treatment in return for his testimony. Dkt. No. 16-18 at 111-21, 132-204; Dkt. No. 16-19 at 1-85; Dkt. No. 16-21 at 113-204; Dkt. No. 16-22 at 1-27. Testimony was also elicited from a variety of law enforcement and scientific sources, as well as from Ellen Ford, the Clinical Director of the Vera House, an agency serving victims of domestic violence and sexual assault, who testified concerning Rape Trauma Syndrome ("RTS").[4] *See generally* Dkt. Nos. 16-16 – 16-25. For the defense, neither petitioner nor MacDonald presented any witnesses or evidence on their behalf. Dkt. No. 16-23 at 45-46. Defendant Buccina, on the other hand, called three witnesses and additionally testified in his own defense, stating that he spent some of the evening in question with his girlfriend and then an off-duty police officer who, when called as a witness, had no recollection of having been with Buccina on that evening. *See generally* Dkt. No. 16-23 at 46-96, 111-55.

---

[4]     According to Ford, RTS was first recognized in 1974, and describes different types of reactions suffered by victims of rape and sexual assault, both during and subsequent to the time of the attack. *See generally* Dkt. No. 16-19 at 86-101; Dkt. No. 16-20 at 1-22. According to her testimony, the acute phase occurs at the time of the attack and up to several months later, followed by a second phase, called the reorganization or reintegration phase. *Id.* at 93-94. During the acute phase, a victim may either be controlled, holding in her emotions and possibly even appearing normal and calm, or instead may adopt an expressive style, in which she becomes hysterical. *Id.* at 94. Among the factors determining how a victim responds are her stress level prior to the assault and the degree of support she receives afterwards. *Id.* at 95-96. Ford also explained that many rape victims, fearing death, will go into "survival mode," and many victims are unable to remember details at the beginning but may remember them later. *Id.* at 96-97.

Following the trial, petitioner was acquitted of acting as a principal in the rape of AH but was convicted as an accomplice to Buccina, MacDonald, and Hilborn in their acts of rape. Dkt. No. 16-24 at 199-204. Reome was also convicted of conspiracy but acquitted of the commission of a sexual act as an accomplice. *Id.* Petitioner was sentenced on July 19, 2006, to three consecutive, determinate terms of incarceration of twenty-five years each for the rape counts, to be followed by five years of post-release supervision. Dkt. No. 16-25 at 22. Petitioner was also sentenced to an additional two-to-four years of imprisonment on the conspiracy count, to run consecutively with the rape sentences. *Id.*

Petitioner appealed his conviction to the New York State Supreme Court Appellate Division, Fourth Judicial Department, arguing in a brief prepared by his counsel that (1) the trial court should have dismissed the charges against him based upon insufficient corroboration of Hilborn's accomplice testimony; (2) the trial court erred in refusing to grant him a separate trial; (3) the verdict was against the weight of the evidence; and (4) he was deprived of a fair trial as a result of several "sundry errors," including the deprivation of his right to confront and cross-examine witnesses resulting from the trial court's denial of his request to subpoena Hilborn's psychiatric records, the admission of testimony regarding RTS, and the trial

court's denial of a dismissal motion based upon improper venue. *See generally* Dkt. No. 16-2. Acting *pro se,* Reome filed a supplemental appeal brief, additionally claiming that (1) the grand jury proceedings leading to the return of an indictment against him were defective; (2) the evidence against him was insufficient to support his convictions; (3) several errors deprived him of a fair trial; (4) the sentence imposed was unlawful; and (5) he received ineffective assistance of counsel at trial. *See generally* Dkt. No. 16-5.

On July 10, 2009, a five-judge panel of the Fourth Department issued a split decision affirming petitioner's conviction. *People v. Reome*, 64 A.D.3d 1201 (4th Dep't 2009). In its decision, the three-judge majority concluded that the trial court did not abuse its discretion in denying petitioner's motion for a severance, finding that the anticipated evidence against petitioner and his co-defendants was similar and the defenses to be offered were not in irreconcilable conflict. *Reome*, 64 A.D.3d at 1202. The court further concluded that, when viewed in light of the elements charged, the verdict was not against the weight of the evidence. *Id.* Turning to the issue of corroboration, the majority concluded that the evidence satisfied the requirements of the New York Criminal Procedure Law ("CPL") §

60.22(1), which addresses corroboration of accomplice testimony.[5] *Id.* at

1202-03. The appellate court also rejected petitioner's claim that the

cumulative errors at trial effectively denied him of the right to a fair trial and

found no evidence that the trial court punished petitioner for choosing to

proceed to trial, rather than enter a guilty plea. *Id.* at 1203. The court did,

however, find that the sentence imposed was unduly harsh and severe

under the circumstances and accordingly modified the sentence as a matter

of discretion to require that all of the sentences imposed run concurrently.

*Id.* Petitioner's claim concerning the legal sufficiency of the evidence was

---

[5]     Section 60.22 of the CPL provides as follows:

> 1. A defendant may not be convicted of any offense upon the
> testimony of an accomplice unsupported by corroborative
> evidence tending to connect the defendant with the
> commission of such offense.
>
> 2. An 'accomplice' means a witness in a criminal action who,
> according to evidence adduce in such action, may reasonably
> be considered to have participated in:
>
> (a) The offense charged; or
>
> (b) An offense based upon the same or some of the same
> facts or conduct which constitute the offense charged.
>
> 3. A witness who is an accomplice as defined in subdivision
> two is no less such because a prosecution or conviction of
> himself would be barred or precluded by some defense or
> exemption, such as infancy, immunity or previous
> prosecution, amounting to a collateral impediment to such a
> prosecution or conviction, not affecting the conclusion that
> such witness engaged in the conduct constituting the offense
> with the mental state required for the commission thereof.

N.Y. C.P.L. § 60.22.

rejected as unpreserved for review, and the remaining arguments were disposed of by the following statement: "We have considered the remaining contentions of petitioner in his pro se supplemental brief and conclude that they are without merit." *Id.*

The two dissenting justices disagreed with the majority regarding the corroboration of Hilborn's accomplice testimony, noting that "the People failed to offer any independent evidence sufficient to corroborate the testimony of the accomplice identifying [Reome] as one of the perpetrators of the rape of [AH.]" *Reome*, 64 A.D. 3d at 1204.

Petitioner was granted leave to appeal to the Court of Appeals. *People v. Reome*, 914 N.E.2d 1023 (2009). In his brief to that court, Reome again claimed that (1) the trial court should have dismissed the charges against him based upon the insufficiency of evidence to corroborate Hilborn's accomplice testimony; (2) the trial court erred in failing to grant a severance; and (3) he was denied his right to confront and cross-examine the witnesses when the trial court denied him access to Hilborn's psychiatric records. *See generally* Dkt. No. 16-10. On June 17, 2010, the Court of Appeals issued a decision affirming the Appellate Division's order by a six-to-one margin. *People v. Reome*, 933 N.E.2d 186 (2010). Addressing first the question of corroboration, the Court of Appeals rejected petitioner's

argument that *People v. Hudson*, 414 N.E.2d 385 (1980), required the prosecution to introduce independent evidence connecting petitioner with the crimes in order to corroborate Hilborn's accomplice testimony. *Reome*, 933 N.E.2d at 188-89. The Court of Appeals concluded that courts "may consider harmonizing evidence as well as independent evidence, while giving due weight to the difference between the two" when analyzing whether CPL § 60.22 has been satisfied. *Id.* at 190. With respect to petitioner's argument concerning the denial of access to Hilborn's psychiatric records, the court determined the issue was unpreserved for appeal and then concluded that petitioner's "remaining arguments lack merit." *Id.* at 191. In a dissenting opinion, Judge Theordore Jones concluded that the question of corroboration should be controlled by the court's decision in *Hudson*, and that the testimony against petitioner was not supported by independent corroborating evidence tending to connect him with the crime charged as required under CPL § 60.22(1). *Id.* at 192-93.

On or about September 8, 2011, petitioner applied to the Fourth Department for a writ of *coram nobis*, arguing that he had received ineffective assistance of appellate counsel. *See generally* Dkt. No. 16-13. That application was denied in a decision dated November 10, 2011. *See People v. Reome*, 932 N.Y.S.2d 758 (4th Dep't 2011). Petitioner's

application for leave to appeal to the New York Court of Appeals was denied on February 23, 2012. *People v. Reome*, 965 N.E.2d 968 (2012).

B. Proceedings in This Court

Petitioner commenced this proceeding on March 8, 2012.[6] Dkt. No. 1. Reome raises four grounds in his petition, including (1) the New York Court of Appeals unreasonably applied clearly established federal law by finding that the testimony of his accomplice was properly corroborated; (2) to the extent the New York Court of Appeals effectively overruled its prior decision in *Hudson*, it created an unlawful *ex post facto* application of the new rule and deprived him of a fair trial; (3) the trial court denied Reome a fair trial by refusing his request for a separate trial; and (4) the trial court improperly denied his request for a subpoena of Hilborn's psychiatric records. *See generally id.* Respondent, the acting superintendent at the facility in which Reome was held at the time he filed his petition, has filed an answer and submitted to the court the relevant state records associated with petitioner's

---

[6]    Reome's petition is signed and dated February 28, 2012. Dkt. No. 1 at 15. In this circuit, a motion or pleading filed by a *pro se* prison inmate is deemed filed on the date that he turned the pleading over to the prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is deemed filed on the date that the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk," rather than when it is received by the court clerk); *but see Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (suggesting that the operative filing date is that on which the court clerk receives the pleading). When measured from the date Reome's conviction became final, and excluding the time during which his *coram nobis* petition was pending, the filing of this petition satisfies the one-year statute of limitations governing habeas corpus petitions pursuant to 28 U.S.C. § 2244(d)(1).

conviction. Dkt. Nos. 11, 12, 16. Petitioner filed a reply on November 12, 2014.[7] [Dkt. No. 18](#).

Reome's petition, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1398, 1400 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v.*

---

[7]      On November 26, 2012, the court granted petitioner's request for an extension of time to submit his reply. Text Order Dated Nov. 26, 2012. In the order granting the request, the court set a new deadline of December 27, 2012. *Id.* Accordingly, petitioner's traverse is untimely by approximately two years. Out of an abundance of caution, and mindful of my obligation to extend special solicitude to *pro se* litigants, I have considered the reply in analyzing the pending petition.

*Moore*, --- U.S. ----, 131 S. Ct. 733, 739 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61 (2d Cir. 2007) (Sotomayor, J.). The AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, --- U.S. ----, 131 S. Ct. 1305, 1307 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 131 S. Ct. at 1398. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 131 S. Ct. at 1398; *Wash. v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's

decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.    Petitioner's Corroboration of Accomplice Testimony Claim

In his petition, petitioner sets forth two separate arguments concerning Hilborn's accomplice testimony. Dkt. No. 1 at 5. First, he contends that the trial court erred in denying his request for dismissal of the charges based on the absence of any independent evidence corroborating Hilborn's accomplice testimony in violation of CPL § 60.22. *Id.* Second, petitioner argues that the New York Court of Appeals violated the *ex post facto* clause of the Constitution in overruling case law that existed at the time of the commission of the crime and trial. *Id.*

1.    CPL § 60.22

To the extent petitioner challenges the state court's determination that the prosecution adduced sufficient evidence to corroborate Hilborn's accomplice testimony in accordance with CPL § 60.22, that claim is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for writ of habeas corpus in behalf of a person in custody . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Unlike the New York

statutory requirement, which mandates that accomplice testimony be corroborated, CPL § 60.22, the United States Constitution requires only that a conviction be supported by sufficient evidence. *Jackson v. Va.*, 445 U.S. 307, 318-19 (1979); *see also Scrivner v. Tansy*, 68 F.3d 1234, 1239 (10th Cir. 1995) ("The Constitution does not prohibit convictions based primarily on accomplice testimony." (citing cases)). Under federal law, the uncorroborated testimony of an accomplice may satisfy this constitutional requirement, provided that it "is not incredible on its face and is otherwise capable of establishing guilt beyond a reasonable doubt." *Scrivner*, 68 F.3d at 1239; *see also United States v. Elusma*, 349 F.2d 76, 79 (2d Cir. 1988) ("An accomplice's testimony. . . need not be corroborated to establish guilt."); *accord, Dann v. Rabideau*, No. 05-CV-0969, 2008 WL 2704900, at (N.D.N.Y. July 7, 2008) (Kahn, J., *adopting report and recommendation by* Treece, M.J.). Accordingly, because petitioner's first claim is purely a state law matter, it is barred from habeas review. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quotation marks omitted)); *Mariani v. Kelly*, No. 97-CV-0384, 2001 WL 1860961, at *4 (N.D.N.Y. Jan. 17, 2001) (Sharpe, M.J.), *report and recommendation adopted by* 2001 WL 35948563 (N.D.N.Y. Sept. 27, 2001) (Scullin, J.), (recommending denial of

a petition for writ of habeas corpus where the petitioner argued that the

accomplice testimony at trial was not sufficiently corroborated pursuant to

CPL § 60.22).[8]

        2.    *Ex Post Facto* Clause[9]

The due process clause of the Fourteenth Amendment, rather than

the *ex post facto* clause, applies to petitioner's claim regarding the New

York Court of Appeals' decision. "[D]ue process bars courts from applying a

novel construction of a criminal statute to conduct that neither the statute

nor any prior judicial decision has fairly disclosed to be within its scope."

*Rogers v. Tenn.* 532 U.S. 451, 459 (2001); *see also United States v.*

*Burnom*, 27 F.3d 283, 284 (7th Cir. 1994) ("[T]he ex post facto clause does

not apply to judicial constructions of statutes. [It] is a limitation upon the

powers of the Legislature, and does not of its own force apply to the Judicial

Branch of the government."). At the same time, however, while "[t]he *Ex*

*Post Facto* Clause, by its own terms, does not apply to courts," courts

analyzing claims of due process violations based on judicial decisions

---

[8]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

[9]     Respondent argues that petitioner failed to exhaust his *ex post facto* claim because he "failed to raise it in federal constitutional terms" in state court. Dkt. No. 11 at 30. Even assuming this is true, which I do not necessarily concede, the court is not precluded from addressing the merits of unexhausted claims. 28 U.S.C. § 2254(b)(2); *see also Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002).

should remain mindful of the clause and its scope. *See Rogers*, 532 U.S. at 456, 460 (finding that the *ex post facto* clause "figures prominently" in the petitioner's argument that the state court violated his rights in retroactively applying a judicial decision abolishing the common law "year and a day rule").

"The fair warning principle is violated if a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers*, 532 U.S. at 455 (quotation marks and alterations omitted); *accord, Ortiz v. N.Y. State Parole in Bronx, N.Y.*, 586 F.3d 149, 158-59 (2d Cir. 2009). With respect to the meaning of an "unexpected and indefensible" interpretation of state law, it is well settled that, "[t]he Due Process Clause requires only that 'the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden, and thus not lull the potential defendant into a false sense of security, giving him no reason even to suspect that his conduct might be within its scope.'" *Rubin v. Garvin*, 544 F.3d 461, 469 (2d Cir. 2008) (quoting *United States v. Herrera*, 584 F.2d 1137, 1149 (2d Cir. 1978)); *accord, Ortiz*, 586 F.3d at 159.

As was noted above, CPL § 60.22 is New York's accomplice corroboration rule. *People v. Besser*, 96 N.Y.2d 136, 143 (2001). It states

that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. C.P.L. § 60.22(1); *see also Besser*, 96 N.Y.2d at 143. In one of its cases issued prior to petitioner's appeal to that court in the underlying state criminal matter, the New York Court of Appeals counseled that, "[t]o meet the statutory mandate [of CPL § 60.22], the corroborative evidence must be truly independent; reliance may not to any extent be placed on testimony of the accomplice for to do so would be to rely on a bootstrap." *People v. Hudson*, 51 N.Y.2d 233, 238 (1980). In other words, *Hudson*, which was still good law at the time of the commission of the underlying crimes and at the time petitioner was tried, "would require that [courts] consider only evidence that is 'independent' in the sense that it could be viewed as connecting defendant to the crime even if the accomplice testimony did not exist." *Reome*, 15 N.Y.3d at 192.

In its decision concerning petitioner's appeal, the New York Court of Appeals overruled *Hudson* because it was "not supported by [the court's] other cases[.]" *Reome*, 15 N.Y.3d at 192. Instead of interpreting CPL § 60.22 to require "truly independent" evidence – evidence that in no way relies on the testimony of the accomplice – to corroborate, the Court of Appeals made clear that "[c]ourts may consider harmonizing evidence as

well as independent evidence, while giving due weight to the difference between the two." *Id.* at 194.

On appeal to the Court of Appeals, petitioner relied on *Hudson*'s holding, arguing that the prosecution had failed to adduce any evidence at trial corroborating Hilborn's accomplice testimony regarding petitioner's identity, and, therefore, no corroborating evidence was offered that connected petitioner with the commission of the crime. *Reome*, 15 N.Y.3d at 192. In its decision, the Court of Appeals acknowledged that AH's testimony at trial corroborated "the great bulk of Hilborn's testimony" but failed to corroborate petitioner's identity. *Id.* The court, however, concluded that the absence of evidence corroborating Hilborn's identification of petitioner in the commission of the crime was not dispositive because "other corroborative evidence, though not independent in the *Hudson* sense, should not be disregarded" and sufficiently "harmonized" with Hilborn's testimony to satisfy CPL § 60.22. *Id.* at 195. Liberally construed, petitioner now argues in this habeas matter that the Court of Appeals' overruling of *Hudson* violates his due process rights because he relied on *Hudson*'s interpretation of CPL § 60.22 in choosing to not present a defense at trial and was not on notice of the court's interpretation of that statute as set forth in its decision addressing his appeal. *See generally* Dkt. No. 18.

Because the holding in *Reome* was anticipated by the Court of Appeal's cases both before and after *Hudson*, it cannot be said that its interpretation of CPL § 60.22 in this case was either "unexpected [or] indefensible." The court cited five of its cases in support of the decision to overrule *Hudson*'s interpretation of the accomplice corroboration rule, including *Besser*, 96 N.Y.2d 136 (2001); *People v. Breland*, 83 N.Y.2d 286 (1994); *People v. Bretti*, 68 N.Y.2d 929 (1986); *People v. Daniels*, 37 N.Y.2d 624 (1975); and *People v. Dixon*, 231 N.Y. 111 (1921). The court relied on language from these earlier cases that suggested the corroborative evidence required under CPL § 60.22 need only "*harmonize* with the accomplice's narrative as to have a tendency to furnish the necessary connection between defendant and the crime." *Id.* at 116-17 (emphasis added); *accord, Reome*, 15 N.Y.3d at 194; *Breland*, 83 N.Y.2d at 294; *Bretti*, 68 N.Y.2d at 930. The court then said that, in earlier cases, it had held "that some evidence may be considered corroborative even though it simply supports the accomplice testimony, and does not independently incriminate the defendant." *Reome*, 15 N.Y.3d at 194. As applied to petitioner's appeal, the Court of Appeals found that "ample" evidence at trial harmonized with, and therefore corroborated, Hilborn's testimony. *Id.* at 195.

Having reviewed the cases upon which the Court of Appeals relied in explicitly overruling the *Hudson* requirement that the corroborative evidence offered pursuant to CPL § 60.22 may not rely "to any extent" on the testimony of the accomplice, I find that the ruling is not indefensible so as to deprive petitioner of due process. The cases relied on by the court reflect the principle that CPL § 60.22 only requires evidence that harmonizes with an accomplice's testimony, as opposed to entirely independent evidence that, on its own, does not rely on the accomplice's testimony. Accordingly, I find that the Court of Appeals' decision regarding petitioner's appeal did not violate petitioner's due process rights. In light of the sea of cases offered by the Court of Appeals explaining and applying CPL § 60.22 both before and after *Hudson*, petitioner was provided "sufficient warning" as to the statute's meaning. *Rubin*, 544 F.3d at 469.

C.    Request for Separate Trial

The next ground asserted in Reome's habeas petition stems from the trial court's refusal to grant him a separate trial from his two co-defendants. Dkt. No. 1 at 7. Respondent maintains that the trial court's ruling was not contrary to or an unreasonable application of clearly established Supreme Court law. Dkt. No. 11 at 34-37.

1.    <u>Clearly Established Supreme Court Law</u>

Petitioner's claim implicates the Fourteenth Amendment. *Grant v. Hoke*, 921 F.2d 28, 29, 31 (2d Cir. 1990). "It is within the sound discretion of the trial judge as to whether the defendants should be tried together or severally," *Opper v. United States*, 348 U.S. 84, 95 (1954), and it has been noted that "consolidated prosecutions [of multiple defendants] 'conserve funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993) (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)). "A defendant seeking to overturn a denial of a severance motion. . . must show that he was so severely prejudiced by the joinder as to have been denied a fair trial[.]" *Grant*, 921 F.2d at 31 (quotation marks omitted); *see also Opper*, 348 U.S. at 94-95 (finding the petitioner's claim failed where he could point to nothing more than a "general possibility of confusion, [and] points out nothing specifically prejudicial resulting from the joint trial"). Nevertheless, a joint trial is "fundamentally unfair where the codefendants present mutually antagonistic defenses." *Grant*, 921 F.2d at 31. The mere showing of "some antagonism" between the defendants, however, is not sufficient to warrant severance. *Id.* (quotation marks omitted). Instead, "separate trials are required only upon a showing that the

jury, in order to believe the core of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant." *Id.* (quotation marks and alterations omitted).

        2.    <u>Contrary to or Unreasonable Application of Clearly Established Supreme Court Precedent</u>

In this instance, there is no indication that petitioner suffered any actual prejudice as a result of the joint trial. The evidence against all of the individuals was common and the defenses were compatible. Neither MacDonald, who called no witnesses at trial, nor Buccina, who testified and did call additional witnesses, implicated petitioner or gave testimony that appears to have been harmful to his defense. Accordingly, I recommend a finding that the state court's conclusion that petitioner's rights were not violated by the trial court's refusal to grant him a severance was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

      D.    <u>Subpoena of Hilborn's Psychiatric Records</u>

The final ground advanced by petitioner stems from the trial court's denial of his request for a subpoena permitting him to obtain the psychiatric records of Hilborn. Dkt. No. 1 at 8. Respondent answers this claim by arguing that the ground was not preserved for appellate review and that an

independent and adequate state ground precludes review of this claim. Dkt. No. 11 at 37-41.

As a matter both of comity, and in keeping with the principles of federalism, a federal court ordinarily will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on a ground that is both "independent and adequate[.]" *Coleman v. Thompson*, 501 U.S. 722, 736 (1991); *accord, Brown v. Greiner*, 409 F.3d 523, 532 (2d Cir. 2005). While a procedural forfeiture is typically the product of a failure to comply with a state's requirements regarding timely presentment of issues to a court, the question of whether a default discerned by a state court is sufficiently adequate and independent to preclude federal habeas review is governed by federal law. *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006).

Addressing the issue of adequacy, the Second Circuit has observed that

> a procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question. When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review. Nonetheless, the principles of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law.

*Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (citations and quotation marks omitted); *accord, Monroe*, 433 F.3d at 241. As may be self-evident, a state court determination is sufficiently independent if it is divorced from and bears no relation to the merits of the federal law claim presented. *See Coleman*, 501 U.S. at 729 ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question[.]"). When addressing the question of procedural forfeiture, a court should presume that there is no independent and adequate state ground for a state court decision when the decision "'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion[.]'" *Coleman*, 501 U.S. at 733 (quoting *Mich. v. Long*, 463 U.S. 1032, 1040-41 (1983)); *accord, Brown*, 409 F.3d at 531. For a federal court to deny habeas review based on the independent and adequate state ground doctrine, it must be clear that the state court actually relied upon the procedural bar as the basis for its disposition of the claim. *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 262 (1991); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000).

In this instance, the New York Court of Appeals declined to consider the issue of Hilborn's psychiatric records on the merits, concluding that it was unpreserved for review. *Reome*, 15 N.Y.3d at 195. In arriving at this determination, the Court of Appeals applied CPL § 470.05(2), which requires a party to preserve an issue for appellate review by making a contemporaneous objection. *Id.*; *see also Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011). That requirement is well recognized as firmly established and regularly followed as a procedural rule. *See, e.g., Downs*, 657 F.3d at 104; *Whitley v. Ercole,* 642 F.3d 278, 286-87 (2d Cir. 2011). Accordingly, the last ground of Reome's petition is foreclosed on this procedural basis.

E.    Certificate of Appealability

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A

petitioner may demonstrate a "substantial showing" if "the issues are

debatable among jurists of reason; . . . a court could resolve the issues in a

different manner; or . . . the questions are adequate to deserve

encouragement to proceed further."[10] *Barefoot v. Estelle*, 463 U.S. 880,

893 n.4 (1983) (quotation marks omitted). In this instance, because I

conclude that petitioner has not made a substantial showing of the denial of

a constitutional right, I recommend against the issuance of a COA.

IV.   SUMMARY AND RECOMMENDATION

    The habeas petition in this matter raises several grounds, one of

which is a matter of state law and not cognizable in this context. Petitioner's

due process claim fails because he had sufficient notice of the meaning of

CPL § 60.22 at the time the underlying crimes were committed. Reome's

claim regarding a separate trial is meritless based on a finding that he was

not prejudiced by the consolidated trial. Finally, petitioner's contention that

he had a constitutional right to Hilborn's psychiatric records is procedurally

barred. Accordingly, it is hereby respectfully

---

[10]    A similar standard applies when a COA is sought to challenge the denial of a
habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000)
("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find
it debatable whether the petition states a valid claim of the denial of a constitutional right,
and that jurists of reason would find it debatable whether the district court was correct in
its procedural ruling.").

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is further

RECOMMENDED based upon my finding that Reome has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     May 6, 2015
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

2008 WL 2704900
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

James A. DANN, Petitioner,

v.

Michael RABIDEAU, Respondent.

No. 9:05-CV-0969 (LEK/RFT).　|　July 7, 2008.

**Attorneys and Law Firms**

James A. Dann, Sonyea, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, Senta B. Siuda, Esq., Assistant Attorney General,
of Counsel, Syracuse, NY, for Respondent.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

 **\*1**  This matter comes before the Court following a Report-
Recommendation filed on June 6, 2008, by the Honorable
Randolph F. Treece, United States Magistrate Judge, pursuant
to 28 U .S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York. Report-Rec. (Dkt. No. 11).

Within ten days, excluding weekends and holidays, after a
party has been served with a copy of a Magistrate Judge's
Report-Recommendation, the party "may serve and file
specific, written objections to the proposed findings and
recommendations," FED. R. CIV. P. 72(b), in compliance
with L.R. 72.1. No objections have been raised in the allotted
time with respect to Judge Treece's Report-Recommendation.
Furthermore, after examining the record, the Court has
determined that the Report-Recommendation is not subject to
attack for plain error or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 11)
is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it
is further

**ORDERED,** that no Certificate of Appealability shall issue
with respect to any of Petitioner's claims; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all
parties.

**IT IS SO ORDERED.**

### *REPORT-RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Petitioner James A. Dann brings this Petition for a Writ
of *Habeas Corpus* pursuant to 28 U.S.C. § 2254, challenging
his incarceration on the following grounds: (1) the police
did not test the blood alcohol content (BAC) of a witness
before she gave inculpatory statements against Petitioner; (2)
he was denied a fair trial when testimony of his prior bad acts
was introduced at trial; (3) the prosecution failed to provide
corroboration for accomplice testimony; (4) the prosecution
improperly impeached its own witness; (5) he was denied a
fair trial when the district attorney provided unsworn expert
testimony, vouched for the credibility of his own witness,
and then vouched for the lack of credibility of that same
witness; (6) the trial court improperly marshaled evidence
and provided one-sided jury instructions resulting in an unfair
trial; and (7) the jury returned inconsistent verdicts. [1] Dkt.
No. 4, Am Pet. For the following reasons, it is recommended
that the Petition be **denied.**

### I. BACKGROUND

On June 12, 2002, a Chenango County Grand Jury indicted
Petitioner on the crimes of arson in the third degree and
conspiracy in the fourth degree. Dkt. No. 8, Resp., State
Court R. on Appeal (hereinafter "R."), Indictment No.
2002-55, dated June 12, 2002, at R107-110. [2] The indictment
alleged that on June 14, 2001, Petitioner aided and abetted
Trudy L. Ruland in setting fire to the house of Petitioner's
estranged wife, Jonna Dann. *Id.* The prosecution's case was
substantially based on the trial testimony and statements of
Trudy Ruland, who, during the course of being arrested for
disorderly conduct at a bar, and in a state of intoxication,
confessed to setting fire to Jonna Dann's house at the behest
of her boyfriend, James Dann. Trial Tr., dated Jan. 27, 2003,
at pp. 245-46, 267-68, 284-96, 320, & 386-87.

 **\*2**  Petitioner's trial commenced on January 27, 2003.
Testifying for the prosecution was the victim, Jonna Dann,

who stated that Petitioner James Dann was her ex-husband and the father of her two children. Trial Tr. at p. 172. Over objection by Petitioner's counsel, the Honorable W. Howard Sullivan, Chenango County Court Judge, permitted Jonna Dann to testify regarding Petitioner's prior bad acts against her. However, Judge Sullivan gave a curative instruction to the jury that the testimony was to be considered only for establishing a motive, and not Petitioner's propensity to commit arson or any other crime. *Id.* at p. 173. Jonna Dann testified that James Dann had physically and mentally abused her: he would hit, head-butt, and call her names, and had pushed her down the stairs. *Id.* at p. 174. In addition, she testified that on one occasion he came up behind her, cut her hair off, choked her, head-butted her, kneed her in the stomach, kicked her, and told her he was going to kill her. *Id.* at p. 175. Jonna Dann obtained a protective order in family court against Petitioner after that incident, and returned to family court on numerous occasions in order to continue the order of protection, to report support violations, and to address Petitioner's breaking of the protective order. *Id.* at pp. 175-84. She also stated Petitioner constantly threatened to kill her. *Id.* at pp. 183-84.

On June 14, 2001, Jonna Dann's mother called her at work to tell her there was a fire in a house on the road she lived on, at which point she returned home to find it was her house that was ablaze. *Id.* at pp. 184-85. The next morning Jonna saw Petitioner at their son's pre-kindergarten picnic and told him about the fire. *Id.* at pp. 193-94. Petitioner showed little reaction and did not ask if everyone was ok, but later came up behind her and said, "It's pay back time, bitch, you know that song 'Burning down the house?,' " and then called her at work on June 28, 2001, and said, "How do we sleep while our beds are burning?" *Id.* at pp. 194, 234, & 240-41.

New York State Trooper Leonard Switkowski testified that on the night of November 17, 2001, while responding to a complaint of an unruly customer at the Community Lodge in the Village of Sidney, he encountered Trudy Ruland, who was yelling and screaming. Trial Tr. at pp. 244-46. After Ruland refused to leave the bar, she was arrested for disorderly conduct and placed inside Switkowski's police car. *Id.* at p. 246. Inside the car, Ruland was upset and confused as to why her boyfriend, James Dann, did not come outside of the bar, and then stated that she had done a lot of things for him, including burning down a house. *Id.* at pp. 245-46.

Switkowski took Ruland to the police station, *Mirandized* her, and took her statement. *Id.* at pp. 247-49. Switkowski

testified that Ruland exhibited signs of drunkenness but wasn't "falling down drunk. She could walk, she could carry on a conversation. But there was the odor of alcohol about her and the bloodshot eyes, things like that." *Id.* at p. 250. Ruland stated to Switkowski that she had started a fire at the home of Petitioner's estranged wife, and that Petitioner told her how to do it and supplied her with the materials needed, which included lighter fluid, sticks, paper, and meat in case the dog troubled her. *Id.* at p. 253. On cross examination, Switkowski testified he did not ask Ruland how many drinks she had imbibed, nor how long she had been drinking, but affirmed that Ruland was intoxicated at the time she made her statement. *Id.* at pp. 267-68.

 **\*3** Trudy Ruland testified that she was Petitioner's girlfriend and lived with him on and off from February 2001 through January 2002. *Id.* at pp. 280-81. Ruland testified about previous conversations with Petitioner in which they discussed burning the house and how Jonna Dann did not deserve the house. *Id.* at pp. 288-89 & 294-95. On June 14, 2001, Petitioner told her that "tonight was the night." *Id.* at p. 308. That night, around 10 p.m., Ruland went to Jonna Dann's house, entered through a back door into a storage area, and lit the fire. *Id.* at pp. 284-88. Petitioner showed her on a map he had drawn where the door was in the back of the house, and gave her a bag of newspaper, sticks, a soda bottle filled with kerosene, and steaks in case the dogs started barking. *Id.* at pp. 291 & 310-11.

On cross examination, Ruland stated that on November 17, 2001, she began drinking at 3 p.m., and consumed over twenty drinks before her arrest. *Id.* at pp. 319-20. State police investigator Arthur Daniels testified that he interviewed Ruland after she gave her statement to Trooper Switkowski on November 17th. *Id.* at p. 386. Daniels stated that Ruland "had been drinking, but was able to carry on a conversation, able to answer questions, respond appropriately to those questions," and was not falling down or staggering. *Id.* at pp. 386-87. Daniels said Ruland's statement was corroborated by the information she provided about a children's picnic table on the deck, and the point of origin of the fire. *Id* . at pp. 423-25.

Charles Anderson, a certified level two fire investigator, was the senior investigator on a team of four that investigated the fire. *Id.* at pp. 433 & 436-37. His team concluded that the point of origin of the fire was at or near the doorway opening into the storage area at the back of the house. *Id.* at pp. 457-58. Furthermore, the team determined the fire was incendiary and not a natural accident. *Id.* at p. 458. Finally, Anderson stated

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Ruland's November 17th statement was consistent with the physical evidence his team observed, particularly with respect to the point of origin and cause of the fire. *Id.* at pp. 462-63.

For his part, Petitioner testified that he never physically abused his ex-wife, Jonna Dann, and stated that he had been arrested ten (10) to twelve (12) times as a result of frivolous complaints she made to the authorities. *Id.* at pp. 506-07 & 509-10. He also denied having anything to do with the fire at Jonna Dann's home as well as conversing with Ruland about burning down the house, but acknowledged his past relationship with Ruland and stated that she lived with him for a period of time. *Id.* at pp. 522-23 & 526-27. Petitioner stated that on the night of the fire, he went over to his father's house between nine-thirty and ten o'clock p.m., and that Ruland later joined them between eleven and twelve p.m. *Id.* at pp. 582-83.

The jury subsequently convicted Petitioner of arson in the third degree, but acquitted him of the conspiracy charge. *Id.* at p. 778. Judge Sullivan sentenced Petitioner to an indeterminate prison term of four (4) to twelve (12) years, and, in addition, issued an order of protection against him. R., Sentencing Tr., dated Apr. 18, 2003, at R17.

**\*4** Petitioner appealed the judgement of his conviction to the Appellate Division, Third Department, raising the same grounds raised in the instant Petition. Dkt. No. 8, Resp., Pet'r Appellate Br. and App. The Appellate Division dismissed his appeal, affirming his conviction. *People v. Dann,* 788 N.Y.S.2d 264 (N.Y.App. Div ., 3rd Dep't 2005). Petitioner's application for leave to appeal to the New York State Court of Appeals was denied. *People v. Dann,* 831 N.E.2d 975 (N.Y.Ct.App.2005). On August 2, 2005, Petitioner filed this federal *habeas* action. Dkt. No. 1, Pet.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello,* 460 F.3d 238 (2d Cir.2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997); *Rivera v. New York,* 2003 WL 22234679, at \*3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *see also DeBerry v. Portuondo,* 403 F.3d at 66; *Boyette v. LeFevre,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Williams* and *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000)).

### B. Failure to Test Ruland's BAC

**\*5** Petitioner asserts that because the police failed to test the BAC of Trudy Ruland at the time she made inculpatory statements about Petitioner, he was denied the right to a fair trial.

Prosecutors have a constitutional duty to disclose exculpatory evidence to the defense, *Brady v. Maryland,* 373 U.S. 83, 87-88 (1963), however, there is no constitutional duty to create exculpatory evidence on behalf of a defendant, nor to "perform any particular tests[,]" *Arizona v. Youngblood,* 488 U.S. 51, 59 (1988) ("The situation here is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer might have bene exculpatory, but the police do not have a constitutional duty to perform any particular tests.").

In this case, several witnesses testified on the issue of Ruland's level of intoxication on the night of her arrest and subsequent statement to police, including Ruland herself. Both Trooper Switkowski and investigator Arthur Daniels testified that it was clear Ruland had been drinking, but was coherent enough to make a voluntary and truthful statement. Petitioner's counsel vigorously cross-examined these witnesses on this issue, and the jury was given the opportunity to assess Ruland's credibility and the truthfulness of her statement to the police. Trial Tr. at pp. 267-68, 319-21, & 405-411. Finally, although Ruland testified she could not remember making the statement to police, she affirmed that the substance of that statement was true. Trial Tr. at p. 314. Because Petitioner has identified no constitutional violation, this claim should be **dismissed.**

### C. Testimony of Prior Bad Acts

Petitioner asserts he was denied a fair trial because testimony of his prior bad acts was introduced over his objection. In New York State, evidence of prior crimes or bad acts is admissible if relevant to prove something other than propensity to commit the act or crime, such as motive, intent, or identity. *People v. Molineux,* 61 N.E. 286, 294 (N.Y.1901). Similarly, there is no federal constitutional bar against the introduction of evidence of prior bad acts. In fact, Federal Rule of Evidence 404(b) specifically permits the introduction of such evidence when its purpose is to prove, *inter alia,* motive, opportunity, and intent, but not "the character of a person in order to show action in conformity therewith." FED.R.EVID. 404(b); *see*

*also Jones v. Stinson,* 229 F.3d 112, 120 (2d Cir.2000) (stating that "prior acts are admissible to show proof of motive[.]").

However, the Due Process Clause of the Fourteenth Amendment prohibits the introduction of evidence that "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States,* 493 U.S. 342, 352 (1990) (internal citation and quotation marks omitted); *see also Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.1983) ("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." (emphasis in original) (citations omitted)). The standard for determining whether an errant admission of evidence deprived a defendant of a fair trial is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir.1985).

**\*6** In the case at bar, Jonna Dann, Petitioner's estranged wife, was permitted to testify that Petitioner physically and mentally abused her and threatened her life on numerous occasions. Trial Tr. at pp. 172-83. Judge Sullivan gave a curative instruction to the jury, stating:

> [T]he fact that I am allowing this witness to testify about potentially prior bad acts on the part of the defendant is to be considered by you of no proof whatsoever that the defendant possessed a propensity or a disposition to commit the crime charged in this Indictment or in any other crime. It is not offered for such purpose and is not to be considered by you for that purpose. I charge you that such evidence may be considered by you only for the limited purposes of showing a motive, and no other.

*Id.* at p. 173.

Thus, Jonna Dann's testimony was admitted to prove Petitioner's motive for committing arson by identifying and explaining their acrimonious and abusive relationship. The

testimony in question was not offered to prove Petitioner had a propensity to act against the law, as Judge Sullivan's curative instruction makes clear.

Therefore we cannot conclude that the admission of Jonna Dann's testimony about Petitioner's prior bad acts was erroneous under either New York state or federal evidentiary standards, much less that it deprived Petitioner of his constitutional right to a fair trial. *See, e.g., Robertson v. Artus,* 2008 WL 553200, at *10 (N .D.N.Y. Feb. 27, 2008) (admission of testimony regarding a past fight in which petitioner was involved was relevant and admissible to prove motive); *see also Toland v. Walsh,* 2008 WL 820184, at * 13 (N.D.N.Y. Mar. 26, 2008) (fact that evidence would have been admissible under the federal rules of evidence suggested that no due process violation occurred) (citations omitted); *Sierra v. Burge,* 2007 WL 4218926, at *6 (S.D.N.Y. Nov. 30, 2007) (admission of prior bad acts was not erroneous under New York law because it explained motive).

As such, it is recommended that the Petition be **denied** on this claim.

### D. Corroboration of Accomplice Testimony

In his Appellate Brief, Petitioner cited to N.Y. CRIM. PROC. L. § 60.22 for the proposition that the prosecution was required to provide corroboration for the testimony of his alleged accomplice, Trudy Ruland, and failed to do so. [3] Dkt. No. 8, Resp., Pet'r Appellate Br. and App. at p. 38. It is well-settled that claims based solely on state law grounds are generally not cognizable on federal *habeas* review. *Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (citation omitted) Furthermore, Petitioner has not identified a parallel federal constitutional right requiring the same corroboration, nor does one appear to exist. *See United States v. Elusma,* 849 F.2d 76, 79 (2d Cir.1998) ("An accomplice's testimony ... need not be corroborated to establish guilt.") (citing, *inter alia, Caminetti v. United States,* 242 U.S. 470, 495 (1917)); *see also Huntley v. Superintendent,* 2007 WL 319846, at * 17 (N.D.N.Y. Jan. 30, 2007) ("A conviction may be sustained on the basis of the testimony of a single accomplice 'so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt .... [L]ack of corroboration ... goes to the 'weight of the evidence, not to its sufficiency[.]' ") (quoting *United States v. Diaz,* 176 F.3d 52, 92 (2d Cir.1999) (other citations omitted)). Thus, because this claim is purely a state law matter, it is barred

from *habeas* review. *See Mariani v. Kelly,* 2001 WL 1860961, at *4 (N.D.N.Y Jan. 17, 2001).

 **\*7** Even assuming, *arguendo,* that his claim was not barred, it would still fail because the record shows that Ruland's testimony was corroborated. Senior Fire Investigator Charles Anderson's testimony that the fire was incendiary and that the location of the starting point of the fire was at the doorway at the back of the house corroborated Ruland's testimony about how and where she started the fire. Trial Tr. at pp. 433-63. In addition, Jonna Dann's testimony about Petitioner's vindictive statements to her after the fire occurred corroborated Ruland's testimony about Petitioner's role in the arson, and his motive for committing the arson. *Id.* at pp. 194, 234, & 241.

For these reasons, the Petition should be **denied** on this ground.

### E. Improper Impeachment

As his fourth ground for *habeas* relief, Petitioner contends that the prosecutor was improperly allowed to impeach his own witness, Trudy Ruland, thus depriving him of a fair trial. As previously noted, to the extent Petitioner seeks relief pursuant to state evidentiary rules, [4] no such relief is available on federal *habeas* review. *Estelle v. McGuire,* 502 U.S. at 67. To the extent Petitioner is asserting his due process rights under the Fourteenth Amendment were violated, that claim must also fail.

When questioned on direct examination about being arrested and giving a statement to police on November 17, 2001, Ruland testified she did not remember the whole incident with the police. *Id.* at pp. 300-01. The court granted the prosecution's motion to treat Ruland as a "hostile witness," thereby allowing the prosecutor to ask leading questions; the Court, however, specifically warned that if he moved to impeach Ruland, additional procedures would be necessary. *Id.* at p. 307. Resuming direct examination, the prosecutor handed Ruland a copy of her statement to police to refresh her recollection, but she maintained she did not remember giving the statement. *Id.* at pp. 311-14. However, Ruland testified that although she could not remember making the statement to the police, its content was true. *Id.* at p. 314. The court admitted a copy of the statement into evidence. *Id.* at p. 315. Based on the foregoing, it does not appear that Ruland was, in fact, impeached. Rather, she was merely asked leading

questions as a "hostile witness" and her sworn statement, the substance of which she affirmed, was offered into evidence.

In any event, under federal law, a party may impeach any of its witnesses for any reason. *See United States v. Rosa,* 11 F.3d 315, 337 (2d Cir.1993) (citing Rule 607 of the Federal Rules of Evidence). "Where the Government has called a witness whose corroborating testimony is instrumental to constructing the Government's case, the Government has the right to question the witness, and to attempt to impeach him, about those aspects of his testimony that conflict with the Government's account of the same events." *United States v. Eisen,* 974 F.2d 246, 262-63 (2d Cir.2002).

**\*8** Even assuming, *arguendo,* that the evidence was erroneously admitted, the standard for determining whether such an admission deprived a defendant of a fair trial is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." *Collins v. Scully,* 755 F.2d at 18. Given Ruland's testimony that the content of her sworn statement was true, considering also the totality of her testimony, which largely duplicated and amplified the information in her statement, and the independent corroboration from other sources, we cannot conclude that in the absence of the introduction of her sworn statement, a reasonable doubt would have existed.

For all these reasons, it is recommended that this claim be **denied.**

### F. Petitioner's Remaining Claims are Procedurally Barred

Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on an "adequate and independent state ground." *Harris v. Reed,* 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995). "[T]his rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991) (citation omitted). Thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a *habeas* petition. *Harris v. Reed,* 489 U.S. at 264 n. 10.

On direct appeal, the Appellate Division dismissed Petitioner's remaining claims because they had not been preserved at trial. *People v. Dann,* 788 N.Y.S.2d at 797-98. Specifically, Petitioner's fifth claim that the prosecutor made prejudicial comments on summation, sixth claim that the trial court improperly marshaled the evidence, and seventh claim that the jury reached inconsistent and repugnant verdicts were dismissed for failure to make timely objections at trial pursuant to New York's contemporaneous objection rule. *Id.*

The contemporaneous objection rule, codified as N.Y. CRIM. PROC . L. § 470.05(2), requires that in order to preserve a claim for appeal, a defendant must make his objection known at trial, so as to give the trial court the opportunity to remedy its own errors. The Second Circuit Court of Appeals has "observed and deferred to New York's consistent application of its contemporaneous objection rules ." *Garcia v. Lewis,* 188 F.3d 71, 79 (2d Cir.1999) (citing *Bossett v. Walker,* 41 F.3d 825, 829 n. 2 (2d Cir.1994)); *see also Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) (violation of the contemporaneous objection rule is an adequate and independent state ground). Thus, the Appellate Division based its denial of these claims on an adequate and independent state ground, and they are therefore procedurally barred.

**\*9** We may review these procedurally barred claims only if Petitioner demonstrates cause for the default and resulting prejudice, or alternatively that failure to review the claims will result in a "fundamental miscarriage of justice." *Calderon v. Thompson,* 523 U.S. 538, 559 (1998); *Coleman v. Thompson,* 501 U.S. 722, 748-750 (1991). To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson,* 501 U.S. at 753, *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999). Examples of external factors include "interference by official," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Bossett v. Walker,* 41 F.3d at 829 (citing *Murray); United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

In the case at bar, Petitioner has offered no such cause for his failure to timely object. When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice,

since federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Long v. Lord,* 2006 WL 1977435, at \*6 (N.D.N.Y. Mar. 21, 2006).

Petitioner has also failed to demonstrate or even argue that failure to consider these claims would result in a fundamental miscarriage of justice, which "occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.' " *Rodriguez v. Mitchell,* 252 F.3d 191, 203 (2d Cir.2001) (quoting *McCleskey v. Zant,* 499 U.S. 467, 494 (1991). Petitioner has provided no "new evidence" that would support such a claim, *Schlup v. Delo,* 513 U.S. 298, 327 (1995), nor any other reason to question the validity of the verdict he received.

For these reasons, it is recommended that Petitioner's remaining claims be **denied.**

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Petition for a Writ of *Habeas Corpus* be **DENIED;** and it is further

**RECOMMENDED,** that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

**\*10** Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

Footnotes

1    This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    The State Court Record on Appeal has been numbered R1-R130. We will refer to this numbering for ease of reference.

3    N.Y. CRIM. PROC. L. § 60.22(1) states "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense."

4    In his Appellate Brief, Petitioner cites to N.Y. CRIM. PROC. L. § 60.35(3), which states:

     When a witness has made a prior signed or sworn statement contradictory to his testimony in a criminal proceeding upon a material issue of the case, but his testimony does not tend to disprove the position of the party who called him and elicited such testimony, evidence that the witness made such prior statement is not admissible, and such party may not use such prior statement for the purpose of refreshing recollection of the witness in a manner that discloses its contents to the trier of facts.

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2001 WL 1860961
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James MARIANI, Petitioner,
v.
Walter R. KELLY, Superintendent,
Attica Correctional Facility, Respondent.

No. 97-CV-384 FJS/GLS.  |  Jan. 17, 2001.

**Attorneys and Law Firms**

James Mariani, Petitioner, Pro Se, # 92-A-8789, Attica
Correctional Facility, Attica, for the Petitioner.

Hon. Eliot Spitzer, Attorney General of the State of New
York, Attorney for Respondent, Department of Law, The
Capitol, Albany, Keith Kammerer, Esq., Asst. Attorney
General, for the Respondent.

**REPORT-RECOMMENDATION**

SHARPE, Magistrate J.

 *1  This matter has been referred to the undersigned by the
Hon. Frederick J. Scullin, Jr., Chief United States District
Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules
N.D.N.Y. 72.3(c).

Petitioner filed his habeas corpus petition and supporting
brief on March 21, 1997. Magistrate Judge Smith[1] issued
an Order pursuant to the Rules Governing Section 2254
Cases in the United States District Courts, 28 U.S.C. foll. §
2254, granting petitioner leave to proceed *in forma pauperis,*
ordering service of the petition on respondent, and requiring
service of an answer or other pleading. Respondent has filed
his answer, together with the pertinent state court records[2]
and a memorandum of law. Petitioner filed a traverse (Dkt.
No. 12) and a memorandum of law. (Dkt. No. 15).

On January 26, 1998, petitioner filed a *pro se* motion to
expand the record, in which he requested permission to take
a lie detector test. (Dkt. No. 17). Magistrate Judge Scanlon
denied the motion, noting that petitioner could expand the
record by affidavit. (Dkt. No. 25). Petitioner retained counsel,
who filed a memorandum of law subsequent to issuance of
the Order. (Dkt. No. 26). The Court considered counsel's

memorandum of law, but found no reason to alter its prior
Order. (Dkt. No. 27). Subsequently, petitioner submitted two
affidavits. (Dkt.Nos.28, 30). On March 15, 1999, petitioner
filed an additional memorandum of law. (Dkt. No. 32).

Petitioner complains of a judgment of conviction rendered
against him on October 20, 1992, following a jury trial in
the Albany County Court, wherein he was convicted of two
counts of murder in the second degree, and two counts of
burglary in the second degree. Petitioner was sentenced to an
aggregate indeterminate term of forty years to life.

The Appellate Division, Third Department affirmed the
conviction on April 21, 1994. *People v. Mariani,* 203 A.D.2d
717, 610 N.Y.S.2d 967 (3rd Dep't 1994). The New York
Court of Appeals denied leave to appeal on September 29,
1994. *People v. Mariani,* 84 N.Y .2d 869, 642 N.E.2d 334,
618 N.Y.S.2d 15 (1994).

In April of 1995, petitioner made a motion to vacate
the judgment pursuant to Article 440 of the New York
Criminal Procedure Law [hereinafter "C.P.L."], on the
grounds of ineffective assistance of counsel and prosecutorial
misconduct. The Albany County Court denied the motion.
*See* Decision and Order, dated July 17, 1995. (Breslin, J.), at
Pet'r's Ex. A, at 59-62.[3]

Petitioner filed an application for a writ of error *coram
nobis* alleging ineffective assistance of appellate counsel.
The application was denied by the Appellate Division, Third
Department, on December 15, 1995. *See* Pet'r's Ex. A, at
A-64.

Petitioner raises three claims in the instant application for
habeas corpus relief. Petitioner alleges that: (1) the evidence
adduced at trial was insufficient to support the verdicts; (2) the
indictment was based upon defective grand jury proceedings
and should have been dismissed; and, (3) the prosecutor's
failure to produce a witness referred to extensively in his
opening statement unduly prejudiced petitioner and denied
him a fair trial.

 *2  Respondent seeks dismissal of the petition on the grounds
that it is barred by the applicable statute of limitations.
Alternatively, respondent submits that petitioner failed to
satisfy the standard set forth in 28 U.S.C. § 2254(d).[4]
Respondent submits that: a) the evidence adduced at trial was
sufficient to sustain the verdicts; b) the grand jury claim raised
in Ground Two is not cognizable for federal habeas corpus

review; and, c) petitioner procedurally defaulted on the claim raised in Ground Three, which in any event, fails to state a claim upon which habeas corpus relief may be granted.

This court finds that petitioner's application is not barred by the applicable statute of limitations, but for the following reasons agrees with the respondent and recommends that the petition be denied and dismissed.

## 1. *Facts*

Petitioner's conviction resulted from his involvement in the burglary that took place at his grandparents' home in Colonie, New York, on May 15, 1986. The burglary was carried out by co-defendants Robert Skinner and Keith Snare. During the commission of the crime, petitioner's grandparents, Jake and Dora Cohn, were murdered.

Marjorie Trainosky is petitioner's mother and the victim's daughter. Trainosky was on the phone with her mother, Dora Cohn, when her mother said, "Stop, wait a minute, Jake; stop, Jake, wait a minute, please." (Trial transcript [hereinafter "T."] at 185). Trainosky then heard a lot of noise, including sounds of things "crashing" and a lot of "feet movement." (T. 185). Thinking her father and mother were fighting, Trainosky called the Colonie police department and reported a domestic dispute. (T. 187). Trainosky then called petitioner, and they both went to the Cohn's home. (T. 187, 210-211).

The day after the murders, Trainosky and her brother, Fred Cohn, went to the Cohns' home, and determined that the only items missing were Dora Cohn's pocketbook and a silver metal box, in which Jake Cohn kept his coin collection. (T. 141). Also on May 16, 1986, petitioner called Lieutenant Raymond Krolack to inquire whether the police had found his grandfather's will. Petitioner told Krolack that his grandfather had promised him a lot of money. (T. 341-343).

The police first received information that petitioner was involved in the crime in February of 1990 when convicted felon Fred Paqua informed the Colonie Police that he had some information. Petitioner and Paqua were incarcerated in the same correctional facility. (T. 794, 797). Paqua told the police that petitioner had been very upset on February 14, 1990 (T. 797), and confided in Paqua that his grandparents had been killed during a burglary that "went bad." Petitioner told Paqua that it was not supposed to have happened that way, and that he (petitioner) had told the others "plenty of times" not to hurt his grandparents and that he did not "want

nothing to happen to them." (T. 800, 804, 808). Petitioner told Paqua that he knew his grandparents had kept money, and that his grandfather was "good for a couple of thousand." (T. 804). Petitioner lamented his own "big mouth," and complained that he would not have been caught had he not called the police the day after the crime to inquire about his grandfather's will. (T. 806-807). The next day, petitioner warned Paqua that he was not to tell anyone about their conversation. (T. 810).

**\*3** On March 27, 1990, the Colonie Police received a call about the murders from Mark Torra, an inmate at the Schenectady County jail. (T. 878). Torra told the police that he had planned on participating in the burglary at the Cohn residence, but changed his mind when he learned that co-defendant Skinner was going to bring along a gun. (T. 888). Torra testified that several hours after Skinner and Snare left to commit the crime, they returned to Torra's apartment with money and a metal box containing coins. Snare said that "something went wrong" and that "someone got hurt very bad." (T. 882).

Torra testified that petitioner came to his apartment early in the morning the day after the murders, and said to Skinner and Snare, "I can't believe you guys did that shit. It wasn't supposed to happen like that. I can't believe you did this. Why did you have to do it. It didn't have to be done." (T. 892). Torra also testified that several weeks later, petitioner asked him to sell some coins and said "[y]ou know where they came from." (T. 905-906). Torra testified that he sold one coin and gave the money to petitioner (T. 905).

## 2. *Statute of Limitations*

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132. The AEDPA provides that an application for a writ of habeas corpus from a person in custody pursuant to a State court judgment must be filed within one year from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review ...." AEDPA § 101, 28 U.S.C. § 2244(d)(1)(A) ("subsection (A)").

However, in *Ross v. Artuz,* 150 F.3d 97, 101 (2d Cir.1998), the Second Circuit set forth a bright line rule providing prisoners whose convictions became final prior to the enactment of the AEDPA a one-year period after the effective date of AEDPA in which to file a first § 2254 petition or a first § 2255 motion. [5] Petitioner's conviction became final on

September 29, 1994, when he was denied permission to appeal to the New York Court of Appeals, or certainly no later than December 29, 1994, which marks the conclusion of the ninety days during which he could have sought certiorari in the United States Supreme Court. *See Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997) (citing Rule 13 of the Rules of the Supreme Court of the United States); *see also, Figueroa v. Kelly,* 1997 WL 833448, at *3 (E.D.N.Y. Dec. 19, 1997). Since petitioner's conviction became final before the effective date of the AEDPA, he was statutorily accorded until April 24, 1997, to file his habeas corpus petition. *Ross,* 150 F.3d at 103. Petitioner's application was filed on March 21, 1997, and was thus timely.

### 3. *Proof Beyond a Reasonable Doubt*

In Ground One, petitioner contends that the evidence presented by the People was insufficient to establish his guilt beyond a reasonable doubt. [6] On habeas corpus review, a state verdict must be upheld if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wright v. West,* 505 U.S. 277, 283, 112 S.Ct. 2482, 2485, 120 L.Ed.2d 225 (1992); *Green v. Abrams,* 984 F.2d 41, 44 (2d Cir.1993).

 **\*4** Petitioner claims that the prosecution: a) failed to corroborate the testimony of Mark Torra with evidence tending to connect petitioner with the commission of the charged offenses; and, b) failed to prove that petitioner acted with the mental culpability required for the commission of the burglary, and in furtherance thereof, solicited, requested, commanded, importuned or intentionally aided his co-defendants to engage in such activity.

### a). *Corroboration of Torra's Testimony*

A federal court may entertain a habeas petition only to the extent that it alleges custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Thus, claims based on violations of state law are not generally cognizable on federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991) (citing *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990))(additional citation omitted); *Hameed v. Jones,* 750 F.2d 154, 160 (2d Cir.1984).

Petitioner's claim that the accomplice testimony was not sufficiently corroborated alleges purely a matter of state

law, [7] and is thus not cognizable on federal habeas corpus review. *See Lewis,* 497 U.S. at 780; *Estelle,* 502 U.S. at 67. The Federal Constitution does not prohibit the conviction of a defendant based on the uncorroborated testimony of an accomplice, if the accomplice's testimony is credible. *See e.g., Gaiter v. Lord,* 917 F.Supp. 145, 150 (E.D.N.Y.1996); *Perez v. Metz,* 459 F.Supp. 1131 (S.D.N.Y.1977), *aff'd without op. sub. nom Perez v. Harris,* 603 F.2d 214 (2d Cir.1979). In any event, the record reveals that Mark Torra's testimony was corroborated by the testimony of Fred Paqua, and Frederick Cohn, who testified that his father's metal box containing rare coins was missing (T. 141). *See Mariani,* 203 A.D.2d at 718, 610 N.Y.S.2d at 970.

### b). *Sufficiency of the Evidence*

Petitioner submits that the prosecution failed to prove that he acted with the mental culpability required for the commission of the burglary, and that in furtherance thereof, solicited, requested, commanded, importuned or intentionally aided Skinner and Snare. [8] This court does not agree.

New York law provides that a person can be held liable for the criminal conduct of another person when, "acting with the mental culpability required for the commission [of the conduct which constitutes an offense], he solicits, requests, commands, importunes or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. In rendering their verdict in the instant case, the jury necessarily credited the testimony of Fred Paqua and Mark Torra.

On habeas corpus review, a state verdict must be upheld if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wright,* 505 U.S. at 283; *Green v. Abrams,* 984 F.2d 41, 44 (2d Cir.1993). The habeas court does not weigh the evidence nor determine the credibility of witnesses. *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996)(citing *United States v. Rosa,* 11 F.3d 315, 337 (2d Cir.1993). It is up to the jury to determine the credibility of a witness, and the court must defer to the jury's decision to believe or disbelieve a witness' testimony. *See United States v. Khan,* 53 F.3d 507, 514 (2d Cir.1995); *see also, Williams v. McCoy,* 7 F.Supp.2d 214 (E.D.N.Y.1998).

 **\*5** Crediting the People's witnesses, the jury could reasonably have inferred that petitioner was involved in planning the burglary. Torra testified that early in the morning the day after the crime was committed, petitioner came to

Torra's apartment and said to Skinner and Snare, "I can't believe you guys did that shit. It wasn't supposed to happen like that. I can't believe you did this. Why did you have to do it? It didn't have to be done." (T. 892). Furthermore, the jury could infer petitioner was involved in the burglary and received proceeds from the crime if it credited Torra's testimony that petitioner asked Torra several weeks after the crime to sell coins, at which time he stated that Torra "[knew] where they came from" (T. 905-906).

In conjunction with Paqua's testimony that petitioner told him that his grandparents died in a burglary that went bad, that it was not supposed to happen that way, that he knew his grandfather had kept money and that he had told the others not to hurt his grandparents (T. 800, 808), this court finds that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that petitioner acted with the mental culpability required for the commission of burglary, and that he either solicited, requested, commanded, importuned or intentionally aided another to commit the crime of burglary.

Therefore, this court recommends that Ground One of the petition should be denied and dismissed.

### 4. *Grand Jury Proceedings*

In Ground Two, petitioner submits that he was denied due process of law as a result of grand jury improprieties, consisting of the introduction of perjured testimony and testimony regarding uncharged crimes. [9]

Petitioner's contentions of improprieties in the grand jury proceedings are not cognizable for federal habeas corpus review. *See e.g., United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989). In *Mechanik,* the Supreme Court held that:

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Mechanik,* 475 U.S. at 70, 106 S.Ct at 942.

The Second Circuit has held that this reasoning is applicable to collateral federal court claims concerning state grand jury proceedings. *See Lopez,* 865 F.2d at 32 ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in federal court"). [10]

This court finds that any improprieties that occurred in the grand jury proceedings in petitioner's case were cured by the petit jury's guilty verdict. [11] As such, this court recommends that Ground Two of the petition be denied and dismissed.

### 5. *Procedural Default*

 **\*6** In Ground Three, petitioner claims that he was deprived of a fair trial as a result of the prosecutor's failure to call David Coons as a witness, especially since the prosecutor referred to Coons' anticipated testimony in his opening statement. [12] The Appellate Division held that the issue was not preserved for appellate review since petitioner did not request a mistrial. *Mariani,* 203 A.D.2d at 720, 610 N.Y.S.2d at 970. The Appellate Division alternatively considered the merits of petitioner's claim, and held that petitioner suffered no undue prejudice. [13] *Id.*

Federal habeas review is barred where a state court has rejected federal claims as defaulted pursuant to an independent and adequate state procedural rule. If the last state court to render a judgment on the issue "clearly and expressly" stated that its judgment rested on a state procedural bar, federal habeas review is barred. *Harris v. Reed,* 489 U.S. 255, 262-63, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996). The outcome is not affected by the fact that the court alternatively ruled on the merits of petitioner's claim. "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *see also, Glenn,* 98 F.3d at 722-724; *Arce v. Smith,* 889 F.2d 1271, 1273 (2d Cir.1989).

Federal habeas review is not barred when a petitioner can demonstrate cause for the default and actual prejudice

resulting from the alleged violation of federal law, *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991), or establish that he is "probably ... actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L .Ed.2d 397 (1986). Petitioner has not attempted to establish cause for the procedural default, [14] thus the Court need not decide whether he suffered actual prejudice. *See Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). Since the record does not suggest that he is actually innocent, this court recommends that Ground Three be dismissed. [15]

WHEREFORE, based on the findings in the above Report, it is

RECOMMENDED that the petition be DENIED and DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have TEN (10) DAYS within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e), and it is

ORDERED that the state court records herein be returned directly to the office of the Assistant Attorney General at the conclusion of these proceedings. He has agreed to make them available for any appellate review.

## Footnotes

1    This case was re-assigned to this court on November 21, 1997. (Dkt. No. 16). Thereafter, it was reassigned to Magistrate Judge Scanlon (Dkt. No. 23), and again re-assigned to the undersigned on August 13, 1998. (Dkt. No. 29).

2    The state court records submitted by respondent are listed in the first paragraph of the answer. (Dkt. No. 9).

3    Petitioner argued that counsel was ineffective for: 1) failing to request that Mark Torra's testimony be stricken; 2) failing to again seek severance before trial, due to the admission into evidence of improperly redacted statements by co-defendants and statements to non-police personnel; 3) failing to prepare an alibi defense; and, 4) disclosing a burglary charge that was prejudicial. *See* Decision and Order, at A-60. Petitioner also argued that the judgment should be vacated due to prosecutorial fraud and misrepresentation resulting from the prosecutor's failure to give oral notice of statements petitioner made to Mark Torra. *Id.* at 61.
     The County Court found that sufficient facts appear on the record such that the ineffective assistance of counsel issue could have been raised on direct appeal. The Court alternatively ruled that the claim lacked merit. *See Id.* at A-60. The Court held that the requirement of notice was not applicable to petitioner's statement to Torra, since Torra is a private citizen. *Id.* at A-61. Further, the Court held that petitioner was not "ambushed," since he was provided with a copy of the police report that recited Torra's receipt of the metal box and coins from petitioner, as well as a copy of Torra's grand jury testimony. The Court noted that the discrepancy between Torra's grand jury and trial testimony was a credibility issue, which petitioner's counsel did attack, and is not evidence of prosecutorial fraud. *Id.* at A-61.

4    This section provides as follows:
     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceeding unless the adjudication of the claim-
     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

5    In *Ross,* the Court concluded that
     [...] in light of the importance of the subject matter of habeas petitions and § 2255 motions, the grace period should be clear; and in light of Congress' selection of one year as the limitations period, we conclude that prisoners should have been accorded a period of one year after the effective date of AEDPA in which to file a first § 2254 petition or a first § 2255 motion.
     150 F.3d at 103.

6    The Appellate Division, Third Department, held that the evidence was legally sufficient, finding as follows:

Contrary to defendant's assertions, our review of the record satisfies us that the evidence adduced was legally sufficient to establish each element of the crimes charged and, after considering the probative force of the testimony and the varying inferences that could be drawn therefrom, that the verdict was not against the weight of the evidence. (*People v. Bleakley,* 69 N.Y.2d 490, 495, 508 N.E.2d 672, 515 N.Y.S.2d 761 (1987)).

*Mariani,* 203 A.D.2d at 718-719, 610 N.Y.S.2d at 970.

7    New York Criminal Procedure Law § 60.22(1) provides as follows:

1. A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.

2. An "accomplice" means a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in:

(a) The offense charged; or

(b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged.

8    On direct appeal, petitioner urged that he could not be held liable through accessorial conduct because the evidence demonstrated, at best, that he had knowledge that the burglary was to take place, but not that he solicited, requested or aided Skinner and Snare in committing the crime. *See Mariani,* 203 A.D.2d at 717, 810 N.Y.S.2d at 969. The Appellate Court held that although the statements attributable to petitioner, as testified to by Paqua and Torra, did not per se demonstrate that he assisted Skinner and Snare in the burglary of his grandparents' home, it is clearly inferable that he did so, thus presenting a question of fact for the jury to determine. (citation omitted). Indeed, it is axiomatic that where competing inferences may be drawn from the evidence, so long as they are not unreasonable, they are within the exclusive domain of the finders of fact. (citation omitted). *Mariani,* 203 A.D.2d at 718, 610 N.Y.S.2d at 969.

9    The Appellate Division noted that there was no allegation that the prosecutor knowingly introduced perjured testimony. The court held that the testimony of Danielle Van Wagner, which implicated Skinner, and of Janice Miller, which pertained to an unrelated burglary that allegedly involved petitioner, "can hardly be considered of such import as to have materially influenced the grand jury." *Mariani,* 203 A.D.2d at 719, 610 N.Y.S.2d at 969.

At the grand jury proceedings, David Coons testified regarding incriminating conversations he had with petitioner while they were both incarcerated at the Schenectady County jail. Coons also testified about an incriminating conversation that he had with Robert Skinner, which implicated petitioner. The prosecutor withdrew Coons as a trial witness when he learned that Coons was incarcerated at the time of the alleged conversation with Skinner, and thus, it could not have taken place at the time and location testified to by Coons. *See Mariani,* 203 A.D.2d at 719, 610 N.Y.S.2d at 969. The Appellate Division held as follows:

Because Coons did not testify at trial, it is impossible to determine from the record before us whether Coons actually lied. In any event, we note that there was ample additional evidence before the Grand Jury to support the elements of the crimes charged (*see, People v. Goetz,* 68 N.Y.2d 96, 497 N.E.2d 41, 117, 506 N.Y.S.2d 18 (1986)). We have considered defendant's other contentions regarding the Grand Jury proceedings and find them to be without merit. *Mariani,* 203 A.D.2d at 719, 610 N.Y.S.2d at 970.

10    In *Lopez,* 865 F.2d at 32, the petitioner's claims of impropriety before the grand jury concerned the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law. The Court held that each impropriety was cured in the jury trial which resulted in the petitioner's conviction, and as such, any error before the grand jury was harmless.

11    Relying on *United States v. Basurto,* 497 F.2d 781 (9th Cir.1974), petitioner asserts that the indictment should be dismissed because the prosecutor introduced perjured testimony. In *Basurto,* 497 F.2d at 785, it was held that "the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." However, petitioner concedes that there is no indication that the prosecutor knew the evidence was perjured at the time it was introduced. *See* Pet'r's Supporting Br. at 32-33. Indeed, the Appellate Division noted that it is possible that Coons did not actually perjure himself, but was mistaken as to when the conversation with Skinner occurred. *Mariani,* 203 A.D.2d at 719, 610 N.Y.S.2d at 970.

12    In his opening, the prosecutor stated that David Coons would testify that he spoke to Jimmy Mariani [petitioner] about burglarizing his grandparents' house. He spoke to him about the money that was kept in the silver box; that Jimmy Mariani wanted to recruit someone to rip off his grandparents; that he didn't actually want to go and do the deed. But that he would get part of the proceeds. (T. 95-96).

13    The Appellate Division held as follows:

Initially, we note that defendant did not request a mistrial and thus has not preserved the issue for our review. (citations omitted). In any event, it is well known that prosecutors make representations in opening statements that later are incapable of proof and in the absence of bad faith or undue prejudice, they will not result in reversible error. (citation omitted). Here, Supreme Court properly instructed the jury that the comments of the attorneys were not evidence, and although Coons was supposed to testify concerning defendant's admission to him regarding his involvement in the burglary, Paqua's testimony served to fulfill that purpose. Accordingly, we do not perceive any undue prejudice to defendant.

*Mariani,* 203 A.D.2d at 720; 610 N.Y.S.2d at 970.

**14** Rather, petitioner insists that the Appellate Division did not clearly and expressly rely on a state procedural bar because the Court "*note[d]* that the defendant did not request a mistrial and thus has not preserved the issue for our review." *See* Memorandum of law (Dkt. No. 15), at 12 (quoting *Mariani,* 203 A.D .2d at 719-720, 610 N.Y.S.2d at 970)(emphasis added). In support of his argument that the court's "mere notation" of a procedural default does not constitute a clear and express holding of default, petitioner cites *Ramirez v. Leonardo,* 764 F.Supp. 762, 764 (E.D.N.Y.1991). However, the Second Circuit has made clear that federal habeas corpus review is foreclosed when the state courts have addressed both the procedural bar and alternatively ruled on the merits. *See Velasquez,* 898 F.2d at 9. The case currently before the court is *not* comparable to situations in which the Appellate Division holds a claim "either unpreserved or without merit," language which the Second Circuit has found too ambiguous to preclude habeas review. *See e.g., Cruz v. Greiner,* 1999 WL 1043961, at *13 (S.D.N.Y. Nov. 17, 1999)(citing *Tankleff v. Senkowski,* 135 F.3d 235, 247 (2d Cir.1998). In the instant case, the Court *noted* there had been no objection, and *found* the issue to be unpreserved. The use of the phrase "in any event" shows that the Appellate Court found the claims unpreserved, yet was alternatively addressing the merits.

**15** Even if this court were to address the merits of petitioner's claim, petitioner would not be entitled to habeas corpus relief. A federal court's review of a prosecutor's action on habeas corpus is very limited. To obtain relief, a habeas petitioner must show that the prosecutor engaged in "egregious misconduct ... amount[ing] to a denial of constitutional due process." *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Petitioner must prove that he suffered actual prejudice such that the prosecutor's misconduct "had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994). The allegedly improper conduct must be reviewed within the context of the entire trial to determine whether it amounted to "prejudicial error." *Strouse v. Leonardo,* 928 F.2d 548, 557 (2d Cir.1991). The court must consider "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Friedman,* 909 F.2d 705, 709 (2d Cir.1990).

This court finds that the prosecutor's reference to Coons' anticipated testimony in his opening statement did not have a substantial and injurious effect or influence in determining the jury's verdict. The court instructed the jurors that the attorney's comments did not constitute evidence (T.1109) and that they were to decide the case exclusively on the basis of admissible evidence (T. 1211-1212). Furthermore, Paque's testimony provided evidence that petitioner was involved in planning the burglary. Thus, in light of the totality of evidence, any harm or prejudicial impact from the prosecutor's reference to Coons in his opening statement was insignificant and did not deprive petitioner of a fair trial.

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2001 WL 35948563
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

James MARIANI, Petitioner,
v.
Walter R. KELLY, Superintendent,
Attica Correctional Facility, Respondent.

No. 9:97CV384 FJSGLS. | Sept. 27, 2001.

**Attorneys and Law Firms**

James Mariani, Attica Correctional Facility, Attica, New York, Petitioner pro se.

Office of the New York, State Attorney General, Department of Law, The Capitol, Albany, New York, for Defendant, Keith Kammerer, AAG, of counsel.

**MEMORANDUM–DECISION AND ORDER**

SCULLIN, Chief J.

**I. INTRODUCTION**

**\*1** On March 21, 1997, Petitioner filed his habeas corpus petition and supporting brief pursuant to 28 U.S.C. § 2254. Petitioner asserts three grounds for his petition: (1) the evidence adduced at trial was insufficient to support a guilty verdict beyond a reasonable doubt; (2) the prosecution presented perjured testimony during the grand jury proceeding to obtain Petitioner's indictment; and (3) the prosecution's failure to bring forth witness David Coons to testify after emphasizing his testimony in its opening statement unduly prejudiced Petitioner and, thereby, denied him a fair trial.

Respondent seeks dismissal of the petition on several grounds. First, Respondent contends that the petition is time-barred. Second, he asserts that the evidence adduced at trial was sufficient to sustain the verdict because any rational trier of fact could have found Petitioner guilty. Third, Respondent claims that Petitioner's grand jury claim is not cognizable for federal habeas corpus review because the claim concerns state deficiencies. Finally, Respondent argues that the petition fails to state a claim upon which habeas corpus relief may

be granted and that Petitioner failed to preserve the claim on appeal.

On January 17, 2001, Magistrate Judge Gary L. Sharpe issued a Report–Recommendation in which he recommended that the Court deny and dismiss Petitioner's petition for writ of habeas corpus. Specifically, Magistrate Judge Sharpe disagreed with Respondent's claim that the statute of limitations barred Petitioner's petition because the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") extended Petitioner's allotted time for filing his petition. On the other hand, Magistrate Judge Sharpe found that, in light of the evidence presented at trial, a jury could infer that Petitioner was involved in the burglary. Magistrate Judge Sharpe also found that Petitioner was not denied due process during the grand jury proceedings as a result of perjured testimony and testimony concerning uncharged crimes. Further, Magistrate Judge Sharpe found that Petitioner was not denied due process as a result of the prosecution's failure to call David Coons as a witness after referring to his testimony in its opening statement. Finally, Magistrate Judge Sharpe concluded that federal habeas review is barred in this case because Petitioner did not request a mistrial, which would have preserved the issue for review. On January 25, 2001, Petitioner filed a timely objection to the Report–Recommendation.

**II. DISCUSSION** [1]

The Court's review is *de novo* with respect to those findings and recommendations in a magistrate judge's report-recommendation to which a party has filed timely objections and clearly erroneous with respect to those parts of the report-recommendation to which a party does not object. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72; *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990). With this standard in mind, the Court will review each of Petitioner's objections to the Report–Recommendation *seriatim.*

**A. Timeliness of Petitioner's habeas corpus petition**
**\*2** The AEDPA provides that a petition for writ of habeas corpus from a person in custody pursuant to a state court judgment must be filed within one year from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A). In *Ross v. Artuz,* 150

F.3d 97 (2d Cir.1998), the court held that a prisoner whose conviction became final prior to the enactment of the AEDPA had until one year after the effective date of that statute in which to file a § 2254 petition. *See id.* at 103.

Magistrate Judge Sharpe rejected Defendant's contention that the statute of limitations barred the instant petition and held that the petition was timely because it was filed on March 21, 1997, within one year of the effective date of the AEDPA. *See* Report–Recommendation at 10.

As Magistrate Judge Sharpe stated in his Report–Recommendation, "Petitioner's conviction became final on September 29, 1994, when he was denied permission to appeal to the New York Court of Appeals, or certainly no later than December 29, 1994, which marked the conclusion of the ninety days during which he could have sought certiorari in the United States Supreme Court. *See id.* at 9–10 (citing *Hughes v. Irvin,* 967 F.Supp. 775, 778 (E.D.N.Y.1997) (citing Rule 13 of the Rules of the Supreme Court of the United States); *Figueroa v. Kelly,* 1997 WL 833448, at *3 (E.D.N.Y. Dec. 19, 1997)). Therefore, Petitioner had until April 24, 1997 to file his petition for writ of habeas corpus. Since he filed his petition on March 21, 1997, the petition was timely. Accordingly, the Court adopts Magistrate Judge Sharpe's recommendation and holds that Petitioner's application for a writ of habeas corpus is not time-barred.

**B. Sufficiency of evidence at trial**

On habeas corpus review, a federal court must uphold a state court verdict if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Wright v. West,* 505 U.S. 277, 284 (1992) (quoting *Jackson v. Virginia,* 443 U.S., at 319, 99 S.Ct., at 2789 (emphasis in original)); *see also Green v. Abrams,* 984 F.2d 41, 44 (2d Cir.1993). Furthermore, a federal court may entertain a petition for writ of habeas corpus only if the petition alleges a violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Claims based upon violations of state law are not generally cognizable on federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (citing *Lewis v.. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)) (other citation omitted); *Hameed v. Jones,* 750 F.2d 154, 160 (2d Cir.1984). Further, the habeas court does not weigh the evidence nor determine the credibility of witnesses. *See Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996) (citing *Rosa,* 11 F.3d at 337 (other citation omitted)). Rather, it is

up to a jury to determine the credibility of a witness, and the court must defer to the jury's decision to believe or disbelieve a witness' testimony. *See United States v. Khan,* 53 F.3d 507, 514 (2d Cir.1995) (citation omitted); *Williams v. McCoy,* 7 F.Supp.2d 214, 221 (E.D.N.Y.1998). Finally, with respect to the issue of corroboration of testimony at trial, the United States "Constitution does not prohibit the conviction of a defendant based on the uncorroborated testimony of an accomplice ... if the accomplice's testimony is credible." *Gaiter v. Lord,* 917 F.Supp. 145, 150 (E.D.N.Y.1996) (citations omitted); *see also Perez v. Metz,* 459 F.Supp. 1131, 1137 (S.D.N.Y.1977).

**\*3** Magistrate Judge Sharpe concluded that, upon crediting the prosecution's witnesses, a jury could have reasonably inferred that Petitioner was involved in planning the burglary. *See* Report–Recommendation at 14. Moreover, based upon the testimony of Mark Torra and Fred Paqua, Magistrate Judge Sharpe reasoned that a rational trier of fact could have found that "[P]etitioner acted with the mental culpability required for the commission of burglary and that he either solicited, requested, commanded, importuned or intentionally aided another to commit the crime of burglary." *See id.* at 15.

Petitioner objects, arguing that the prosecution failed to present sufficient evidence that Petitioner acted with the mental culpability required for the commission of the burglary or the solicitation of the burglary. Petitioner reasons that Paqua's testimony was merely circumstantial evidence that did not connect Petitioner with the burglary. Petitioner further argues that Paqua's testimony actually contradicts Torra's testimony. Finally, Petitioner contends that he was not even present during the commission of the crime and that mere knowledge of the crime's commission is not enough for a conviction.

After viewing the evidence in the light most favorable to the prosecution, the Court concludes that a jury could have reasonably inferred that Petitioner was involved in planning the burglary. Witness Torra testified that early in the morning of the day after the crime was committed, Petitioner came to Torra's apartment and said to accomplices Robert Skinner and Snare, "I can't believe you guys did that shit. It wasn't supposed to happen like that. I can't believe you did this. Why did you have to do it? It didn't have to be done." *See* Trial Transcript at 892. A jury could infer from these statements that Petitioner had been involved in planning the burglary. Further, Torra testified that when Petitioner asked him to sell coins, Petitioner stated that Torra "[knew] where they came

from." *See id.* at 905–06. Petitioner subsequently received proceeds from the sale of those coins.

In addition, witness Paqua's testimony revealed that Petitioner told him that Petitioner's grandparents had died in a burglary that went bad, that it was not supposed to happen that way, that he knew his grandfather had kept money, and that he had told the others not to hurt his grandparents. *See id.* at 800, 808. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner acted with the mental culpability necessary for the commission of burglary and that he either solicited, requested, commanded, importuned, or intentionally aided another to commit the crime. Accordingly, the Court adopts Magistrate Judge Sharpe's recommendation and denies this ground for the petition.

### C. The Grand Jury proceedings

Contentions of improprieties in the grand jury proceedings are not cognizable for federal habeas corpus review. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989).

> **\*4** [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendant[ ] w[as] guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*United States v. Mechanik,* 475 U.S. 66, 70 (1986) (footnote omitted).

Thus, "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez,* 865 F.2d at 32.

Magistrate Judge Sharpe concluded that this particular ground for the petition should be denied because "any improprieties that occurred in the grand jury proceedings ... were cured by the petit jury's guilty verdict." *See* Report–Recommendation at 17 (footnote omitted). Petitioner objects,

arguing that the perjured testimony of four witnesses, Janice Miller, Mark Torra, Danielle Van Wagoner, and David Coons, at the grand jury proceeding spilled over into and prejudiced his petit jury trial. [2] Petitioner further argues that Magistrate Judge Sharpe's Report–Recommendation improperly overrules Magistrate Judge Scanlon's prior holding that grand jury improprieties which prejudice the subsequent petit jury trial can amount to a constitutional violation.

Based upon the Supreme Court's decision in *Mechanik,* the Court concludes that Magistrate Judge Sharpe correctly concluded that any improprieties that occurred during Petitioner's grand jury proceedings were cured by the petit jury's guilty verdict. *See Mechanik,* 475 U.S. at 70. Accordingly, the Court adopts Magistrate Judge Sharpe's recommendation and denies this ground for the petition.

### D. The prosecution's failure to call David Coons as a witness after referring to his anticipated testimony in its opening statement

Federal habeas review is barred "if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed,* 489 U.S. 255, 262 (1989); *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996). "[F]ederal habeas review is [also] foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *see also Glenn,* 98 F.3d at 722; *Arce v. Smith,* 889 F.2d 1271, 1273 (2d Cir.1989). However, federal habeas review is not barred when a petitioner can demonstrate cause for the default and actual prejudice resulting from the alleged violation of federal law, *see Coleman v. Thompson,* 501 U.S. 722, 735 (1991), or the petitioner can establish that he is "actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986). If a petitioner has not attempted to establish cause for the procedural default, a court need not decide whether he suffered actual prejudice. *See Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985).

**\*5** Magistrate Judge Sharpe concluded that since Petitioner had not attempted to establish cause for the procedural default, he did not have to decide whether Petitioner suffered any prejudice. *See* Report–Recommendation at 19–20. Alternatively, Magistrate Judge Sharpe found that the Appellate Division had reviewed the merits of Petitioner's

claim and had held that Petitioner had suffered no undue prejudice. [3] *See id.* n. 14. As Magistrate Judge Sharpe noted, federal habeas corpus review is foreclosed when the state court has addressed the procedural bar, even if it alternatively rules on the merits. *See id.* at 18. Finally, Magistrate Judge Sharpe recommended that this ground for the petition be denied because the record did not suggest that Petitioner was actually innocent. [4] *See id.* at 20.

Petitioner objects, arguing that the prosecution's failure to produce Coons to testify at trial unduly prejudiced him since the rest of the prosecution's evidence was circumstantial and far from overwhelming. Therefore, Petitioner asserts that the lack of evidence combined with the prosecution's extensive reference to Coons' potential testimony, without actually presenting that testimony, denied Petitioner a fair trial.

Despite these arguments with respect to the merits of his claim, Petitioner has not attempted to establish cause for the procedural default. Nor is there any evidence in the record that

suggests that Petitioner is actually innocent. Accordingly, the Court adopts Magistrate Judge Sharpe's recommendation and denies this ground for the petition.

## III. CONCLUSION

After carefully considering Magistrate Judge Sharpe's Report–Recommendation filed in this matter, Petitioner's objections, the relevant parts of the record, and the applicable law, it is hereby

ORDERED that Magistrate Judge Sharpe's Report–Recommendation, dated January 17, 2001, is ACCEPTED in its entirety for the reasons stated herein; and it is further

ORDERED that Petitioner's petition for habeas corpus is DENIED and DISMISSED.

IT IS SO ORDERED.

## Footnotes

1   The Court defers to the factual summary contained in Magistrate Judge Sharpe's Report–Recommendation, dated January 17, 2001, and assumes familiarity with the facts alleged in Petitioner's application for a writ of habeas corpus.

2   The Appellate Division noted that there was no allegation that the prosecutor knowingly introduced perjured testimony. The court held that the testimony of Danielle Van Wagoner, which implicated Skinner, and of Janice Miller, which pertained to an unrelated burglary that allegedly involved Petitioner, "can hardly be considered of such import as to have materially influenced the Grand Jury." *People v. Mariani,* 203 A.D.2d 717, 719 (3d Dep't 1994) (citation omitted).

3   Despite the fact that Petitioner failed to request a mistrial and, thus, had not preserved this issue for review, the Appellate Division ruled on the merits anyway. The court stated that "prosecutors make representations in opening statements that later are incapable of proof and in the absence of bad faith or undue prejudice, they will not result in reversible error." *Mariani,* 203 A.D.2d at 720 (citation omitted). The Appellate Division also found that the trial court had properly instructed the jury that the comments of the attorneys were not evidence. *See id.* Further, the court found that "although Coons was supposed to testify concerning [Petitioner's] admission to him regarding his involvement in the burglary, Paqua's testimony served to fulfill that purpose." *Id.* Therefore, the Appellate Division held that there was no undue prejudice to Petitioner. *See id.*

4   Magistrate Judge Sharpe stated that even if he "were to address the merits of [P]etitioner's claim, [P]etitioner would not be entitled to habeas corpus relief." *See* Report–Recommendation at 20 n. 15. To obtain relief, a habeas petitioner must show that the prosecutor engaged in " 'egregious misconduct ... amount[ing] to a denial of constitutional due process." ' *Floyd v. Meachum,* 907 F .2d 347, 353 (2d Cir.1990) (quoting *Donnelly,* 416 U.S. at 647–48, 94 S.Ct. at 1873–74 (citations omitted)). In this regard, a petitioner must prove that he suffered actual prejudice such that the prosecutor's misconduct "had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994). The allegedly improper conduct must be reviewed within the context of the entire trial to determine whether it amounted to "prejudicial error." *Strouse v. Leonardo,* 928 F.2d 548, 557 (2d Cir.1991). The court must consider "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Friedman,* 909 F.2d 705, 709 (2d Cir.1990) (citations omitted).

    Magistrate Judge Sharpe concluded that the prosecutor's reference in his opening statement to Coons' anticipated testimony did not have a substantial and injurious effect or influence in determining the jury's verdict because the trial court properly "instructed the jurors that the attorney's comments did not constitute evidence ... and that they were to

decide the case exclusively on the basis of admissible evidence." *See* Report–Recommendation at 20 n. 15 (internal citation omitted).

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.